**In re RASH.**

No. 37732.

United States District Court
W. D. Washington, N. D.
Nov. 29, 1948.

George H. Hart and Hulbert, Helsell & Paul, all of Seattle, Wash., for bankrupt.

Hereford T. Fitch and Colvin & Williams, all of Seattle, Wash., for trustee.

BLACK, District Judge.

This matter comes before the court upon the petition of the trustee of the above-entitled estate for a review by this court of that certain order dated July 27, 1948 signed by the Referee in Bankruptcy which allowed to the bankrupt as exempt the following:

"1 truck, consisting of 1937 White Tractor, motor No. HB 610563, Serial No. 199198, and 1945 homemade semitrailer, Serial No. S 87823–Wn."

The Referee made such ruling under the statement that such was "allowed by Rem. Rev.Statutes, Sec. 563(12), to a person engaged in business as a carrier."

The bankrupt in his schedules dated and filed in March of this year valued such tractor and trailer as of the aggregate worth of $4,500, and claimed it under Remington's Revised Statutes § 563(12), his claim using the language "as allowed * * * to a person engaged in business as a carrier." Said combination tractor and trailer was appraised at $3,750. In the summary of the evidence signed by the trustee and presented to the court it was stated "The Trustee and his attorney and bankrupt and his attorney in open court agreed that the value of said truck and trailer amounted to approximately $4,-000.00."

The applicable portion of § 563 of Remington's Revised Statutes of Washington reads as follows:

"The following property shall be exempt from execution and attachment * * *.

"12. To a teamster or drayman engaged in that business for the support of himself and family, his team, consisting of one span of horses, or mules, or two yoke of oxen, or a horse and mule, with harness, yoke, one wagon, truck, cart, or dray."

It appears to the court from the points and authorities presented by counsel that by enactment in 1883 and again by enactment in 1886, which was not thereafter changed, the exemption of a "team * * * with harness, yoke, one wagon, truck, cart, or dray" to a teamster or drayman was for the support of himself "or" family although in the codification of the Session Laws the word "and" is used instead of the word "or". An interlocutory decree of divorce was entered between the bankrupt and his wife on November 1, 1947. Since that time he has lived alone. However, the interlocutory decree of divorce provided, among other things, that the bankrupt should pay to his divorced wife $125 per month until the death or remarriage of such divorced wife.

The Referee expressed the opinion that by reason of the wording of the law as actually enacted by the legislature and pursuant to the decision in Geiger v. Kobilka, 26 Wash. 171, 66 P. 423, 90 Am.St.Rep. 733, that the right of the bankrupt to claim exemption is not dependent upon a family relationship being existent. I too am satisfied that the divorce status of the bankrupt did not deprive him of the right to claim such exemption as subsection or subdivision or paragraph 12 of § 563 allowed to him.

The referee's memorandum decision recites the following: "The trustee contended that the bankrupt was not a teamster or drayman within the meaning of the exemption laws. The evidence established without dispute that the bankrupt began to transport cargo by auto freight in 1934, at which time he had one truck and drove it himself, but that he increased his business and at one time had eight trucks. The inventory on file herein and the appraisement made discloses that the bankrupt had a sizeable fleet of trucks and transport equipment of substantial value; that since about 1939 the bankrupt has not regularly driven a truck, but that occasionally he did take a shift and at all times devoted himself exclusively to the business of transporting of cargo by auto freight. He was in effect an executive devoting his time to supervising the employees, contacting the shippers, and doing many other things incident to the operation of this business, but he still occasionally drove a truck and was capable of driving this truck and had no other means of making a living for himself; and that if the truck and trailer were awarded to him he expected to drive it on the highway in transporting cargo."

In addition to the trustee's contention that the bankrupt was not a teamster or drayman within the meaning of the exemption laws the trustee contended that the equipment claimed by the bankrupt as exempt was not such as subsection 12 of § 563 authorized to be claimed and further that the holding that a motor truck and trailer of a value of about $4,000 was included within the reasonable construction of the term "team * * * with harness, yoke, one wagon, truck, cart, or dray" is clearly erroneous.

In his debtor's petition for adjudication the bankrupt described himself as "engaged in the business of Motor Freight Carrier" as "I. W. Rash d/b/a Wenatchee Seattle Transport Co." In his schedules and amended schedules the bankrupt acknowledged having the vehicles listed below and valued by him as follows:

1939 Chrysler Automobile, $700.00;
1937 White Tractor, $2,500.00;
1945 HM Semi-trailer, $2,000.00;

(such tractor and trailer aggregating an estimated value of $4,500.00 being the items claimed by him as exempt)

1946 Peterbuilt Truck, $8,000.00;
1940 Pybus Trailer, $3,000.00;
1941 Sterling Truck, $5,000.00;
1937 Union Trailer, $2,000.00;
1946 Peterbuilt Truck, $10,000.00;
1936 Utility Trailer, $3,000.00;
1941 Ford Truck, $700.00;
1937 Chev Truck, $300.00;
1936 Ford Pickup Truck, $400.00;
1933 Chev Motor, $80.00.

Such vehicles were estimated by him as having a total value of $37,680.

It was contended in argument before the court in behalf of the trustee that if the bankrupt could claim a combination truck and trailer of a value of $4,000 to $4,500 as exempt because subsection 12 of § 563 did not put a limit upon the value of the team, harness and vehicle which the teamster or drayman could select that then another bankrupt in a similar occupation and business as this bankrupt would be able to claim one of the tremendous trucks or combination tractor and trailers now or in the future using the highways, which might cost $35,000 or $45,000 or more. Counsel

for the bankrupt not only conceded such but actually contended that this bankrupt would have had that right had he possessed such a costly motor vehicle.

At first glance the bankrupt's choice of a $4,500 combination vehicle instead of the 1946 Peterbuilt truck valued at $10,000 or the 1946 Peterbuilt truck valued at $8,000 above-mentioned, is quite puzzling. However, it was disclosed that the large chattel mortgage indebtedness listed by the schedule covered such $8,000 and $10,000 trucks but did not apply to the combination tractor and trailer sought by the bankrupt. It thus becomes clear that the apparently lesser valued combination vehicle he desires is worth much more than a possible equity in the more expensive and more modern Peterbuilt trucks just referred to.

It is conceded by both sides that there has been no decision whatsoever by the Supreme Court of the State of Washington upon the problem raised by the bankrupt's claim to have such tractor and trailer exempt to him, and moreover no claim was made by either party that any lower court in this state had ruled upon the question of whether or not subsection 12 permitted the exemption the bankrupt claims.

In Geiger v. Kobilka, 26 Wash. 171, 66 P. 423, 424, 90 Am.St.Rep. 733, supra, depended upon by the Referee and counsel for the bankrupt as giving the claimant the right to an exemption in spite of the divorce the following important statement is made with reference to determining the legislative intent at the time of the enactment of exemption § 563:

"The whole section must, however, be construed together in relation to the subject-matter under consideration by the legislature * * *. We cannot believe it was the legislative intent to favor all other classes mentioned and exclude the mechanic from a similar privilege. * * *

"A common purpose seems to have been in the mind of the legislature, that of specifying certain trades or vocations to which an exemption belongs, and we do not believe the context justifies the interpretation that it was intended to subject the trade of the mechanic to a different rule from others mentioned."

Decisions from other jurisdictions have been respectively cited by the bankrupt and trustee in support of their respective contentions.

There are a number of decisions from other jurisdictions cited in behalf of the bankrupt which support his contention that he is entitled to the exemption although he is claiming an automotive vehicle of a greater value than would normally have been expected would have been the value of the property mentioned by subsection 12 as being exempt to a teamster or drayman.

There are also contrary holdings, likewise from other jurisdictions, cited by opposing counsel supporting the position of the trustee, among which are In re Wilder, D.C.1915, 221 F. 476; Crown Laundry & Cleaning Co. v. Cameron, 1919, 39 Cal.App. 617, 179 P. 525; Whitney v. Welnitz, 153 Minn. 162, 190 N.W. 57, 28 A.L.R. 68;

Besides such three there are other cases cited which by analogy favor one or more of the contentions of the trustee. To such cases cited by the trustee might well be added Conlin v. Traeger, 1927, 84 Cal.App. 730, 258 P. 433. It not only gives a clear presentation of the issue and distinguishes several authorities relied on by the instant bankrupt but also cites with approval In re Wilder, supra, and Whitney v. Welnitz, supra. In addition, the California court in Conlin v. Traeger, supra, cites as a further basis for its holding Kennedy v. Hills, 9 Cir., 233 F. 666 hereinafter presented as an interpretive aid as to the Washington exemption statute.

But the outside decisions cited, whether favoring the bankrupt or the trustee, either involve rather distinguishable facts or a somewhat different exemption provision, particularly if the entire exemption statute applicable to any such decision be compared with the entire exemption section 563 of this state of Washington. Moreover, in no case cited by either party was there such a substantial exemption allowed or sought as here claimed by bankrupt.

The practical course to pursue here is to scrutinize the entire Washington statute and any helpful decisions of the Washington court or of this Ninth Circuit involving Washington exemption law.

A reading of the entire Washington exemption statute itself immediately discloses the fact that rather modest limits are the general rule for the various classifications of exempt property.

■■ In analyzing the entire § 563 of Remington's Revised Statutes and especially subsection 12 thereof concerning the exemption involved here to a "teamster or drayman" the following language from Kelley v. Butler, 182 Wash. 310, 47 P.2d 664, 666, is to be considered: "It is elementary that property is not exempt from execution unless expressly made so by statute. Of course, homestead and exemption statutes, being remedial in their nature, should be liberally construed in favor of the beneficiaries thereof, but the basic principle as above stated remains."

Certainly under the doctrine of Geiger v. Kobilka, supra, a correct interpretation of the exemption under subsection 12 for a teamster cannot be arrived at without particular attention to the exemption subsections 11 and 13 immediately preceding and succeeding the subsection here under scrutiny. Subsection 11 sets forth the following exemption: "11. To a person engaged in lightering for his support or that of his family, one or more lighters, barges, or scows, and a small boat, with oars, sails and rigging, not exceeding in the aggregate two hundred and fifty dollars, in coin value;"

Subsection 13 provides for exemption as follows: "13. To a person engaged in the business of logging for his support or that of his family, three yoke of work cattle and their yokes, and axes, chains, implements for the business, and camp equipments, not exceeding three hundred dollars, coin in value;"

The only judicial interpretation which I find as to any of the three subsections 11, 12 or 13 is by the Circuit Court of Appeals for the Ninth Circuit in 1916 affirming a ruling by Judge Rudkin of the Eastern District of Washington with respect to subsection 13. That decision is Kennedy v. Hills, 233 F. 666. It states: "The bankrupts were loggers engaged in the business of logging, and had families living with and dependent upon them. By petition for

revision they present the question whether, under paragraph 13, section 563, Remington & Ballinger's Annotated Codes and Statutes of Washington, they were entitled to certain horses as exempt."

The decision points out that paragraph or subsection 13 of § 563 exempts to the logger "three yoke of work cattle and their yokes," etc. without mentioning horses therein. It further points out that subsection 12 providing the exemption for a teamster or drayman exempts "team, consisting of one span of horses, or mules, or two yoke of oxen, or a horse and mule". The decision goes on to say: "Petitioners ask us to include within the meaning of 'work cattle,' used in paragraph 13 just quoted, the horses claimed herein. Their argument is that, when the statute was passed more than 50 years ago, both oxen and horses were used in logging, and that the word 'cattle,' being generic, should include not only neat cattle, but horses, mules, asses, and practically all domestic quadrupeds used as beasts of burden. But, when the various sections of section 563 referred to above are considered, the argument cannot prevail."

In conclusion that decision says: " 'Three yoke of work cattle and their yokes' by all common understanding means bovines and their yokes, and not equines and their harness."

Interestingly that decision quotes with approval this language from Carty v. Drew, 46 Vt. 346: "But when a specific article is exempt, the court cannot extend the statute by construction to another and different article."

It would seem that the legislature by subsection 11 limited the value of the exemption to one engaged in lightering to $250 in value because a lighter, barge, scow or boat might very conceivably be worth many times the average amount for the various occupations which it deemed appropriate should be exempt from creditors. The very next subsection, being subsection 12 and the one involved in this review, indicates that the legislature believed there was no need for a limit. This was natural since it would not be expected that the rea-sonable value of the team, harness and vehicle therein authorized would greatly exceed the average value of what was being allowed by other subsections as exempt to persons engaged in rather similar occupations.

Subsection 11 is certainly entitled to careful consideration in arriving at the legislative intent as to subsection 12. A "lighterer" under subsection 11 may well be viewed as a sort of water teamster. Since subsection 11 exempts specifically described items of property "not exceeding in the aggregate two hundred and fifty dollars, in coin value" it is very difficult to conclude other than that the legislature intended a comparable allowance as to value for the land teamster or drayman under subsection 12.

It also is very difficult for me to believe that the legislature, while intending, as determined by Kennedy v. Hills just mentioned, that "Three yoke of work cattle" for a logger should mean "three yoke of work cattle," should also intend that a team and vehicle for a teamster or drayman should also mean any motorized or self-propelled vehicle, regardless of how expensive or expansive.

From an analysis of section 563 as an entirety I am satisfied that the bankrupt is not a teamster or drayman within the meaning of subsection 12. I think he properly described himself in his debtor's petition as being engaged in the business of "motor freight carrier" and even in his claim of exemption as "a person engaged in business as a carrier." It is extremely singular that nowhere in his schedules does he describe himself as either a teamster or a drayman. The referee used appropriate language when he said "he was in effect an executive."

In addition, I do not consider a combination tractor and trailer such as is claimed by the bankrupt valued at $4,000 to $4,500 as included within any reasonable interpretation of the language "team * * * with harness, yoke, one wagon, truck, cart, or dray". Just as the court in Geiger v. Kobilka, supra [26 Wash. 171, 66 P. 424], could not "believe it was the legis-

lative intent to favor all other classes mentioned and exclude the mechanic" so I cannot believe that it was the legislative intent to single out and favor the teamster and drayman under subsection 12 over all other occupations so as to justify one as far distant as bankrupt from the common understanding of a teamster or drayman in keeping a $4,000 tractor-trailer combination as his exempt property to the injury of his creditors.

Certainly the combination tractor and trailer he wishes to retain is a far cry from the team and vehicle literally described by the legislature in subsection 12.

Exemption statutes of a certainty are to be liberally construed. Counsel for the bankrupt concedes that under the construction they contend for that a $45,000 combination vehicle could be claimed by the bankrupt if his fleet had possessed such. Unquestionably the bankrupt would have claimed the $10,000 1946 Peterbuilt truck actually listed in his schedules had such been free from burdensome chattel mortgage. Such construction to me is not reasonable liberality but is instead distortion.

I cannot allow the exemption claimed. It follows that it should be denied.

There is no intention here to express any high regard for the quaint and outmoded exemption provisions of § 563 of the Washington state code. In subsections 5, 12 and 13 it literally goes back to yoke of oxen days. The entire section should be forthwith modernized, fairly as to the various classifications, with a factual appreciation of present-day times, needs and values.

But such modernization is the duty of the state legislature. It will convene in regular session in less than two months from today.

This court has no right to trespass upon the legislative authority. This court certainly cannot justifiably single out subsection 12 and judicially so revise it under pretense of interpretation as to create a startling and inequitable disparity in relation to other subsections.

It is to be hoped that the legislature revises § 563 as an entirety—practically, properly and promptly.